PRICE, Judge.
E. A. Dieball brought this action to rescind his purchase of a Ford Pickup truck from Bill Hanna Ford, Inc., and to recover judgment for various items of expense and damage incurred by him in connection with the transaction. Dieball also seeks reasonable attorney’s fees under the provisions of La.C.C. article 2545 et seq., relating to the redhibitory action.
As a basis for his suit, Dieball alleges he contracted with Hanna through its salesman, Ralph Festavan, for the purchase of a 1971 ton F°r(i Sport Custom F-250 Camper Special with sufficient weight bearing capacity to accommodate a ten and one-half foot recreational camper; however, the truck delivered was inadequate for this purpose.
Plaintiff named as defendants Hanna, Festavan and Ford Motor Company. Prior to trial of the case plaintiff dismissed Ford as a defendant in his action. Hanna and Festavan answered plaintiff’s demands, denying the allegations that they had not fulfilled their contract with plaintiff by a delivery of a truck meeting the specifications requested by plaintiff in his purchase order, and that the truck was not defective in any respect. These defendants also filed a third party demand against the manufacturer, Ford Motor Company, for judgment over and against Ford should it be found that the truck delivered to plaintiff contained any redhibitory vice or defect.
After a trial on the merits the district court rendered judgment for plaintiff and against defendant, Hanna, rescinding the sale and ordering Hanna to refund the purchase price of $4,404, upon the return of the truck. All other claims of plaintiff were rejected and the third party demands of Hanna against Ford were rejected.
Defendant, Hanna, is the sole appellant from this judgment. Plaintiff has not appealed from that portion of the judgment rejecting his claims for damages or attorney’s fees, nor has he answered Hanna’s appeal to request any modification of the trial court’s judgment.
The operative facts giving rise to this litigation as found by us from the transcript of testimony and the evidence contained in the record are substantially as follows:
Plaintiff contacted Ralph Festavan, a salesman at Bill Hanna Ford, sometime *597 around August 1, 1970, and advised Festa-van he desired to purchase a F-250 Ford Pickup to carry a ten and one-half foot camper he intended to buy. Festavan did not have this type of truck in stock and was unable to procure one from another dealer. He advised plaintiff a 1971 model truck of this type was on order and he would call plaintiff when it arrived.
On August 29, 1970, plaintiff contracted to buy a ten and one-half foot “Open Road” camper, described as a “cab over” style and fully “self contained.” Around the middle of September plaintiff was notified Hanna had received the F-2S0 truck. On this same date plaintiff and his wife were shown the truck by another salesman as Festavan was out of the office. The next day plaintiff, accompanied by his wife, met with Festavan, discussed the truck and reached an agreement on the price and the sale was consummated at that time. A purchase order was prepared by Hanna’s personnel reflecting the specifications on the truck and the information relating to sales price, taxes, etc. This agreement was signed by plaintiff.
The truck delivered to' plaintiff equipped with 1,950 pound rear springs and 8 ply rear tires, had an actual gross vehicle weight capacity of 6,900 pounds.
After installation of the camper previously purchased by plaintiff on the pickup truck, it was apparent the truck was overloaded because of the weight of the camper. The inadequacy of the truck to carry this particular camper is undisputed.
Plaintiff contends his sole motive in purchasing the pickup truck was to provide himself with a recreational vehicle and that Hanna’s sales representative was fully informed of his intended use for the truck and of the size and type of camper he intended to install on the truck. As he was not furnished a vehicle with this capability, plaintiff contends the purchase contract should be rescinded and the purchase price refunded.
Hanna, to the contrary, contends plaintiff had determined for himself the particular type and weight bearing specifications of the truck he desired prior to contacting Festavan, and that a truck meeting plaintiff’s requirements was furnished. Hanna further contends the vehicle sold is identical in quality and equipment to the purchase order signed by plaintiff on the date of the sale. Defendants, although admitting the truck is not adequate for the camper owned by plaintiff, contend the dilemma results from plaintiff’s having failed to obtain and compare the weight of the camper he had purchased to the gross vehicle weight of the truck he selected.
The trial judge in his reasons for judgment concluded that Festavan knew the use plaintiff intended for the truck and the size and type of camper plaintiff intended to install on the truck. He further found Festavan believed at the time of the sale that this particular truck was sufficient to carry any ten and one-half foot self-contained camper and so advised plaintiff. Therefore, the trial judge concluded there was mutual error in the principal cause of the contract and ordered its rescission.
We find no manifest error in the findings of fact of the trial court and are of the opinion the court has ruled in accordance with the applicable law and jurisprudence.
In the case of Ouachita Air Conditioning, Inc. v. C. G. Pierce, 270 So.2d 595 (La.App. 1st Cir. 1971), this court discussed the civil code articles relating to error in the formation of a contract which is sufficient to invalidate the agreement as follows:
“LSA-Civil Code Article 2439 provides that three circumstances must concur for the perfection of a contract of sale, namely, the thing sold, the price and the consent. Article 2456 provides that the sale is considered to be perfect as soon as there exists an agreement for the object and for the price thereof. In this instance the contract of sale was *598 never, perfected because • there was no meeting of the minds or agreement as to the thing or object. Otherwise stated, there was error of fact as to the thing or object which vitiated consent and rendered the contract voidable.
“LSA-Civil Code Articles 1819 and 1820 declare that requisite consent to a contract is lacking when there exists an error of fact. To vitiate a contract, an error of fact must pertain to the principal cause for making the agreement and must pertain to either the motive for making the contract, the person with whom the contract is made, or to the subject matter of the contract itself. LSA-Civil Code Article 1823. No error in the motive can invalidate a contract unless the other party was apprised that it was the principal cause of the agreement or unless from the nature of the transaction' it must be presumed that he knew it. LSA-Civil Code Article 1826. Error as to the thing invalidates a contract only if it bears upon the substance or some substantial quality of the thing that constitutes the object of the agreement. LSA-Civil Code Article 1842. There is error as to the substance when the object is of a totally different nature from that which is intended. LSA-Civil Code Article 1843. Error as to the substantial quality of an object refers to that quality which gives the object its greatest value. LSA-Civil Code Article 1844. Error as to other qualities of an object will also serve to vitiate a contract if such qualities constitute the principal cause of making the contract. LSA-Civil Code Article 1845. The cause of a contract is the consideration or motive for making it. LSA-Code Article 1896.”
The evidence shows the plaintiff, an attorney, had never owned a pickup truck or a camper prior to this transaction and was not experienced in the evaluation of the weight bearing capacities of pickup trucks. He had examined a similar camper of a different make mounted on a F-250 Ford pickup belonging to a friend who worked as a mechanic for another Ford dealer. This truck was equipped with heavier rear springs and tires, giving it a gross vehicle weight capacity of 7,500 pounds. Plaintiff was cautioned by this individual to buy a truck with enough capacity to carry the weight of a self-contained camper. (“Self-contained” denotes a camper equipped with a toilet, shower, stove, refrigerator, air conditioner, etc.).
The testimony and materials filed in evidence show Ford makes three categories'of pickups in the F-250 series: the minimum with 6,100 pounds gross vehicle weight; a second with 6,900 pounds gross vehicle weight; and a third with 7,500 pounds gross vehicle weight. To attain the greater weight capacities, heavier duty rear springs and tires are substituted to the basic F-250 truck. Whether there are additional differences in the three categories relating to rear axle capacity, brake capacity, etc., is not entireley clear from the evidence.
We conclude that it would be difficult and improbable that a customer with no familiarity with trucks could determine the correct specifications for a truck to serve his purpose without the advice of the dealer sales representative. This conclusion is confirmed by the testimony of the Ford Motor Company Customer Service Representative who was consulted on this matter and who testified at the trial.
We believe the evidence fairly shows that during the negotiations for the purchase of the truck plaintiff understood he needed a truck of the F-250 series equipped with heavy duty springs, but did not know the capacity he needed. He had known Festavan for about ten years and it is obvious he relied on Festavan’s belief the truck in question was sufficient for his purpose.
Festavan, in his testimony, admitted he sold numerous trucks to be used in connection with recreational campers over a span of several years and that he usually deter *599 mines the size and weight of the camper involved from the customer to determine if he is selling the customer the correct truck.
It is obvious from the evidence the reason that Festavan did not require Dieball to ascertain the gross weight of the camper he owned so that it could be related to the gross vehicle weight capacity of the truck in question, was because Festavan was of the opinion the 6,900 pound GVW capacity of this truck would be sufficient for any ten and one-half foot self-contained camper. In fact, Festavan testified had he known the truck would not be adequate to sustain the camper, he would not have sold it to plaintiff as he knew this was the sole reason plaintiff desired the truck.
The parties were in error as to a quality of the object of the contract and this quality was clearly the principal and only cause of making the contract. Therefore, the trial court was correct in ordering its rescission. La.C.C. Art. 1845. Jefferson Truck Equipment Co., Inc. v. Guarisco Motor Co., Inc., La.App., 250 So.2d 211.
For the foregoing reasons the judgment appealed from is affirmed. Costs of this appeal shall be paid by appellant.